| | | |
|---|---|---|
| **ELISA KNOWLES COLLINS** | * | **NO. 2024-CA-0484** |
| **VERSUS** | * | **COURT OF APPEAL** |
| **LESLIE RICARD CHAMBERS, HON. MARCUS L. HUNTER,** | * | **FOURTH CIRCUIT** |
| **AND NANCY LANDRY IN HER CAPACITY AS THE** | * | **STATE OF LOUISIANA** |
| **SECRETARY OF STATE FOR** | * | |
| **THE STATE OF LOUISIANA** | | |
| | * | |

**\* \* \* \* \* \* \***

**JENKINS, J., CONCURS IN PART AND DISSENTS IN PART**

I concur with the majority to reverse the trial court and sustain the objection to Ms. Chambers' candidacy. I dissent, however, in the majority's decision to affirm the trial court in maintaining the candidacy of Judge Hunter for the reasons that follow.

The majority incorrectly concludes that Judge Hunter overcame the prima facie evidence presented by the plaintiff that he had not filed his taxes for each of the five previous tax years. I do not agree that once the CPA transmitted the returns electronically and communicated the same to Judge Hunter, this constitutes compliance with the filing requirements set forth in the notice of candidacy. The process of a tax preparer electronically filing a tax return does begin with transmission, however the act of uploading the requisite tax documents and pressing submit or send does not automatically result in the filing of a tax return.

The majority relies exclusively on *Clark v. Bridges*, 2023-00237 (La. 2/22/23), 356 So. 3d 990 in its holding that Judge Hunter satisfied his burden of proof showing that he filed his taxes for each of the five previous tax years. There is a glaring distinction between Bridges's successful transmission of her tax return compared to the attempt by Judge Hunter to file his tax returns. First, Judge Hunter filed no objective evidence to establish that he satisfied the obligations to qualify

as a candidate, specifically, that he filed tax returns the previous five years leading up to qualifying for elective office. Judge Hunter did not present what Bridges presented at her trial: (1) Tax returns transmission; (2) tax returns filed and (3) tax returns received.

In *Bridges*, the tax preparer testified that she transmitted the tax return on the morning of January 25, 2023. She further testified she received confirmation, on January 26, 2023 that the tax return had been transmitted to LDR. There was no intervening act by the tax preparer "between transmission and receipt: the objective evidence confirms that transmission, the operative event, was successful because LDR received the filing." 2023-00237, pp. 8-9, 356 So.3d at 994-95. The court declared the law does not require anything more than this. *Id.*, at p. 9, 356 So. 3d at 995.

Bridges also testified on her own behalf. She testified that her tax preparer gave her a letter dated January 25, 2023 stating that her 2021 State and Federal tax returns where filed electronically. Bridges admitted the letter into evidence. Bridges also made her own public records request as to the filing of her 2021 taxes. At trial, LDR confirmed that in response to Bridges request, LDR was able to provide Bridges with written confirmation that the 2021 taxes were filed on February 6, 2024.

Bridges was able to meet her burden of proof by establishing successful transmission to LDR, and eventually receipt of her tax returns by LDR. Judge Hunter on the other hand introduced no evidence of receipt of his delinquent tax returns by LDR. In fact, Judge Hunter's CPA, Rosie D. Harper, testified that the transmission of the tax returns had not been received by LDR as of the date of the hearing and admitted that on July 27, 2024 she received notice of rejection of the tax returns she attempted to transmit on behalf of Judge Hunter. Ms. Harper also shared in her testimony that from the time she attempted the transmission, July 16,

2024, the status message was "pending." It was pending until the close of qualifying on July 19, 2024. On cross examination, Ms. Harper testified that she kept Judge Hunter updated on the status of actions in processing his tax returns but she never confirmed that she had proof of acceptance/transmittal of the returns.

Another distinction between *Bridges* and Judge Hunter is that Judge Hunter was required to provide a valid Identity Protection Personal Identification Number for his tax return to be accepted. This necessitates an additional operative event to occur for Judge Hunter's tax return to be successfully accepted; whereas in *Bridges* there was no additional step taken subsequent to the electronic transmission of the tax return.

Finally, as stated in *Bridges*, the candidate was able to produce evidence that LDR received her tax return; this is not the case for Judge Hunter. Judge Hunter cannot prove that transmission was successful because he presented no evidence that LDR received the filing. The only proof that Judge Hunter presented at trial as it relates to the acceptance of his tax returns was through the testimony of his tax preparer who testified that up until July 27, 2024, the transmission status was "pending," but on July 27, 2024, LDR rejected the transmission of the returns.

Accordingly, I find that Judge Hunter has not met his burden to overcome the plaintiff's prima facie case. The trial court's judgment overruling the objection to Judge Hunter's candidacy should be reversed.

I concur in all other aspects of the opinion. I agree with the majority that Ms. Chamber's failed to meet her burden of proof to rebut the prima facie case of the plaintiff's objection to her candidacy.